OPINION OF THE COURT
Simons, J.
Defendant is employed as a supervisor in the New York State Department of Taxation and Finance. In May, 1976, he was called for jury duty at a term of the Albany County Court. Under the policy prevailing at the time, State employees serving on jury duty received fully compensable leave time for the days actually served but were expected to return to work when the court did not require their presence. The prosecution claims that defendant stole portions of two salary checks by presenting a false time card which indicated that he was on jury duty on specified days when in fact he was not. It claims that defendant served as a juror for only four days but marked on his time card that he had served over 10 days. Finding that defendant was unlawfully paid for that six-day period, which represented noncompensable and unauthorized leave time, the Grand Jury indicted him for larceny by false pretenses (Penal Law, § 155.30, subd 1; § 155.05, subd 2, par [a]). Following a jury trial, he was found guilty of grand larceny in the third degree. Some 39 months later, he was sentenced to an unconditional discharge and thereafter the judgment was unanimously affirmed by the Appellate Division (92 AD2d 1011).
 Defendant contends before this court that his conviction rests upon insufficient evidence and, alternatively, that the judgment must be vacated and the indictment dismissed because of the court’s unreasonable delay in sentencing him. Notwithstanding that defendant received the money before the false statements were made, the evidence before the jury sufficiently established that defendant received moneys of the State in the form of *362 salary because of the State’s reliance upon his false statements concerning jury service. Because of the State’s system of payment, money previously erroneously paid was deducted upon examination of the employee’s time card. As a result of defendant’s false statements no deductions were made from his subsequent checks as was routinely done in such cases. Defendant’s second point requires reversal, however, and remittitur to the trial court for a hearing to determine whether the unreasonable delay was excusable (CPL 470.40, subd 1; 470.20). Once a person has been criminally charged and prosecuted, a burden rests upon the prosecutor and the court to conclude the proceedings with reasonable promptness and the failure to do so may result in a loss of jurisdiction. It is no excuse that the delay may have been occasioned by extended pleas for leniency. The prosecution having concluded, the court must pass sentence and enter judgment. If it fails to do so, the prosecutor may compel sentence by an article 78 proceeding (see Matter of Hogan v Bohan, 305 NY 110), but in all cases the initiative rests with the court and the prosecution, not the defendant. The delay of 39 months in this case was unreasonable and absent facts excusing it, the indictment must be dismissed.
I
Initially defendant challenges the legal sufficiency of the evidence to support a conviction of larceny by false pretenses. The crime is defined in section 155.05 (subd 2, par [a]) of the Penal Law which expressly incorporates the common-law definition (see, also, People v Churchill, 47 NY2d 151). To convict, the prosecutor was required to prove that defendant obtained title or possession of money or personal property of another by means of an intentional false statement concerning a material fact upon which the victim relied in parting with the property (see People v Miller, 169 NY 339, 351; LaFave & Scott, Criminal Law, § 90, pp 655-672). It has been held that the crime is committed when a party obtains money by presenting false and fraudulent vouchers for work done, materials purchased or services rendered (see People v Hudson Val. Constr. Co., 165 App Div 626, affd 217 NY 172; see, also, People v Freeman, 133 App Div 630, revd on other grounds 203 NY 267).
*363 The evidence at trial established that defendant received money wrongfully. We are concerned only with the element of reliance and whether the money was paid to him by the State relying upon the false representations in his time card. To contrast this case and People v Hudson Val. Constr. Co. (supra), the checks in Hudson Val. were delivered to defendant construction company after the alleged false voucher was submitted. The distinction does not affect culpability, however, because the trial evidence established that had defendant correctly reported his absences from work, the State would have deducted a portion of his salary from a subsequent paycheck. Thus, as noted by the Appellate Division, the larceny was complete and arguably only the date of its occurrence remained unsettled. It occurred during the pay period covering the unauthorized absences or alternatively in the next period when the deduction normally would have been made. In either event, defendant wrongfully received funds from his employer because of his false statements. Defendant has raised no objection to the precise date of the crime’s occurrence, either here or in the courts below, and the discrepancy is not fatal because time is not a material element of the crime charged (see People v Feldman, 50 NY2d 500, 504; People v La Marca, 3 NY2d 452, 458-459, cert den 355 US 920).
II
Defendant was indicted on June 15,1978, trial began on December 4, 1978, and a guilty verdict was rendered on December 5, 1978. Ten days later, defense counsel moved to dismiss the indictment in the interest of justice and moved for a new trial. His motion was denied in all respects. On March 19, 1982, the day before sentencing, defense counsel moved to dismiss the proceeding on the ground that the court had lost jurisdiction over the defendant because of unreasonable delay. The motion was denied. The next day, the Judge, implying that neither he nor the People were responsible, stated cryptically that the 39-month delay resulted from the fact that three different defense attorneys had approached him and requested that he grant an order of dismissal in this case as he had done in the case of a codefendant. He then sentenced defendant to *364 an unconditional discharge. The court’s response to the motion hardly excused a delay of over three years.
Defendant is entitled to be promptly sentenced after conviction; entry of judgment may not be “indefinitely deferred or postponed” (Matter of Hogan v Bohan, 305 NY 110, 112, supra; see, also, People ex rel. Prosser v Martin, 306 NY 710). To this end, CPL 380.30 (subd 1) requires that “[sjentence must be pronounced without unreasonable delay” and we have held that a failure to do so results in a loss of jurisdiction over the defendant (People ex rel. Harty v Fay, 10 NY2d 374; but see Matter of Weinstein v Haft, 60 NY2d 625, affg 93 AD2d 786).
In People ex rel. Harty (supra), relator entered a plea of guilty to the crime of robbery in the second degree on February 10, 1953, in Bronx County. The court set a date in April, 1953, for sentencing, but relator was tried on another robbery charge in March and subsequently pleaded guilty to still another robbery in Westchester County. Upon his plea, he was sentenced to an indefinite term of five years at Elmira Reception Center and later transferred to West Coxsackie. Although certain warrants had been lodged against relator as detainers, the Bronx County authorities took no action concerning the 1953 indictment and plea until 1958 when he was released on parole and brought in on other charges. On November 19, 1959, six and one-half years after his 1953 plea, relator was sentenced in Bronx County. In a habeas corpus proceeding, he sought to invalidate the sentence on the ground of unreasonable and unexplained delay. We granted the petition and held that the long and unnecessary delay in imposing sentence was not only error but resulted in a loss of jurisdiction. The rule followed is not unlike that underlying speedy trial rules generally. Indeed, many State and Federal courts, relying upon dictum in Pollard v United States (352 US 354), hold that the Sixth Amendment guarantee of a speedy trial applies to postconviction proceedings as well and apply the speedy trial criteria set forth in Barker v Wingo (407 US 514), i.e., the length of the delay, reason for the delay, the defendant’s assertion of the right and prejudice to him, to assess claims of unreasonable delay in imposing sentence (see, e.g., Gonzales v State, *365 582 P2d 630 [Alaska]; Reed v State, 295 A2d 657 [Me]; State v Cunningham, 405 A2d 706 [Del]; United States v Reese, 568 F2d 1246; Cessna v Commonwealth, 465 SW2d 283 [Ky]; Erbe v State, 276 Md 541).
There are perceptible distinctions, however, between speedy trial concepts and the requirement of timely sentencing. Speedy trial requirements focus upon the need for a prompt trial so that witnesses are available, possible exoneration is swift and the public’s interest in deliberate prosecution is fulfilled. After a defendant is convicted, the focus shifts to the defendant’s right to appeal, his eligibility for pardon and commutation of sentence, and, if a retrial becomes necessary, the danger that witnesses may be unavailable. Of equal significance in the need for timely sentencing is the public perception that prompt and certain punishment has been imposed upon a defendant found guilty, uninfluenced by legally irrelevant considerations. Thus, we have rested our rule requiring prompt sentencing on broader grounds, inferring that delay inevitably results in prejudice to the defendant.
Our recent decision in Matter of Weinstein v Haft (60 NY2d 625, supra) provides a useful counterpoint to People ex rel. Harty (supra). In Matter of Weinstein, petitioner pleaded guilty to falsifying business records in the first degree on July 9, 1979. Between that date and September 17,1982, petitioner made several motions, underwent surgery and requested that sentencing be adjourned, repeatedly bringing her medical condition into issue. On September 17,1982, the court adjourned the matter until September 16, 1983, in order to consider petitioner’s medical reports. Then, more than three years after the plea, petitioner commenced an article 78 proceeding contending that the court had lost jurisdiction of the case due to unreasonable delay in sentencing her. Her petition was dismissed. Although delays of similar duration had been held to be unreasonable (see People v Newcombe, 18 AD2d 1087; Juarez-Casares v United States, 496 F2d 190), we rejected petitioner’s claim because the period of delay was at her behest, thereby recognizing that the passage of time standing alone does not bar imposition of sentence or require a defendant’s discharge (see Welsh v United States, 348 F2d *366 885). It is unexcusable delay that does so. If the delay is caused by legal proceedings or other conduct of the defendant which frustrates the entry of judgment, it is excusable (see Matter of Weinstein v Haft, supra; Matter of Root v Kapelman, 67 AD2d 131, mot for lv to app den 47 NY2d 706 [a delay of several years did not result in loss of jurisdiction where defendant absconded for five years]). Conversely, even relatively long delays occasioned by the State have been excused for good cause (see, e.g., People ex rel. Weingard v Casscles, 40 AD2d 530 [a 19-month delay was held not to be unreasonable because of understaffed Probation Department]; People v Gibson, 39 AD2d 947 [a one-year delay was held not to be unreasonable because of a shortage of Probation Department staff and large number of pending cases]). But if the delay is the result of judicial or prosecutorial negligence or mistake, a loss of jurisdiction results and the indictment must be dismissed (People v Monaghan, 34 AD2d 815 [a seven-year delay in sentencing was held to be unreasonable inasmuch as the prosecutor made no effort to extradite defendant, serving time in another State on unrelated charges, and bring him before the court]; People v Newcombe, 18 AD2d 1087, supra [a four-year delay was held to be unreasonable where defendant, serving time on Federal charges, could have been produced for sentencing earlier]). In People ex rel. Harty the six and one-half year delay was considered per se unreasonable, but significantly in that case the Bronx County authorities made no real effort to sentence defendant earlier or to account for some of the delay. The duty to do so rested upon them. The court specifically rejected the contention that defendant was required to demand sentence (see 10 NY2d, at p 377).
In sum, whether dismissal is warranted depends upon the length of the delay and the reasons for it. Generally, where the delay is long and unexplained, the courts will hold it unreasonable (see People ex rel. Harty v Fay, supra; People v Monaghan, supra; People v Newcombe, supra). Conversely, where the delay is not protracted and plausible reasons are offered to explain it, the courts hold that it is not unreasonable. When there has been an extended delay and there are plausible reasons for it, the various *367 factors involved must be balanced. In contrast with the approach taken in other States, however, the New York rule assumes the defendant has been prejudiced by unreasonable delay (compare People ex rel. Harty v Fay, 10 NY2d 374, supra, with State v Steelman, 126 Ariz 19). He need not prove it. Nor is he required to take affirmative measures and demand that the court sentence him (cf. Cessna v Commonwealth, 465 SW2d 283 [Ky], supra). That burden rests solely with the State and its agents.
Turning to this appeal, we conclude that the delay of 39 months was unreasonable and that unless excused it resulted in a loss of jurisdiction requiring dismissal of the indictment. The record before us reveals no credible effort to explain the delay nor does it contain adjournments for receiving matters in mitigation of the proposed sentence. The court made an allusion at sentencing to extrajudicial pleas for leniency on behalf of the defendant, but no effort was made to particularize the nature of those contacts or their duration. Such extrajudicial contacts are to be discouraged, but regardless of whether the pleas for leniency appear on the record or not, the delay was extensive and unreasonable unless excused.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur.
Order modified and case remitted to Albany County Court for further proceedings in accordance with the opinion here and, as so modified, affirmed.